NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COBALIS CORPORATION | : | Hon. Dennis M. Cavanaugh |
| Plaintiff, | : | **OPINION** |
| vs. | : | |
| | : | Civil Action No. 2:11-CV-04716 (DMC)(JAD) |
| CORNELL CAPITAL PARTNERS, LP, YORKVILLE ADVISORS, LLC, and YA GLOBAL INVESTMENTS, L.P., | : : : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon a motion for a Temporary Restraining Order by Plaintiff Cobalis Corporation ("Plaintiff" or "Cobalis") pursuant to FED. R. CIV. 65 to enjoin Defendants from taking steps to enforce any rights purportedly arising under a 2006 Private Investment in Public Equities ("PIPE") structured financing transaction, or any rights purportedly obtained through Cobalis' reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. The Court has reviewed the submissions of the parties, and for the reasons set forth below, Plaintiff's request for relief is **denied**.

**I.**    **BACKGROUND**[1]

      Plaintiff Cobalis Corporation is a Nevada corporation with its principle place of business in California. Plaintiff is a specialty pharmaceutical company that has been involved in the

---

[1] Theses facts have been adopted from the Parties' respective submissions.

development of an over-the-counter dietary supplement called PreHistin®, which is intended to treat seasonal and year-round allergy sufferers. PreHistin® is believed by Plaintiff to be a novel alternative to the standard "antihistamine" approach to treating allergic disease. In late 2006, Plaintiff recognized a need for financing in order to continue to test, and subsequently market, manufacture, sell, and distribute their product. Plaintiff consulted with Defendants YA Global Investments, L.P. ("YA Global") and Defendant Yorkville Advisors, LLC ("Yorkville) (collectively "Defendants") regarding potential financing.[2] On or about December 20, 2006, Plaintiff entered into a structured Private Investment in Public Equities ("PIPE") structured financing transaction with Defendants.

In general, a structured PIPE financing arrangement involves a private placement of debt securities or debentures that are convertible into common stock at a conversion price that automatically adjusts downward if the company's share price falls. The PIPE financing at issue here involved an agreement for Plaintiff to issue Defendant secured convertible debentures in a private placement offering, followed by a registration of the common stock. Defendant could convert its debentures based on a 10% discount from the 3 lowest-volume weighted average share price (VWAP) over a 15 day look-back period preceding the conversion. The convertible debentures were secured by assets of Cobalis pursuant to the terms of a Security Agreement, and were further secured and guaranteed by an Asset Pledge Agreement by 8,400,000 shares of the Radovich family common stock with recourse. Plaintiff agreed to grant Cornell the right to control the issuance and delivery of all shares convertible under the securities purchase agreement, debentures, and warrants, as set

---

[2]The initial transaction occurred when YA Global was operating under the name of Cornell Capital Partners, LP. For purposes of this opinion, Defendants will be referred to as "YA Global" or "Defendants."

forth in the Pledge and Escrow Agreement. Pursuant to the parties' financial arrangement, Defendants provided Plaintiff with a total of $3,850,000 under Secured Convertible Debentures.

The documents alleged by Plaintiffs to comprise the PIPE financial transaction are as follows: Securities Purchase Agreement, Secured Convertible Debenture, Registration Rights Agreement, Security Agreement, Asset Pledge Statement, Pledge and Escrow Agreement, Irrevocable Transfer Agent Instrument, Lock Up Agreement, Warrant No. CLSC-1-A, Warrant No. CLSC-1-B, Warrant No. CLSC-1-C, and Warrant No. CLSC-1-D. Plaintiff attached as exhibits to its Motion for Temporary Restraining Order copies of the "Pledge and Escrow Agreement"(Pl. Mem. Supp. TRO., Ex. B, ECF No. 4-5), the "Security Agreement"(Pl. Mem. Supp. TRO, Ex. C, ECF No. 4-6), the "Securities Purchase Agreement"(Pl. Mem. Supp. TRO, Ex. D, ECF No. 4-7), and the "Secured Convertible Debenture"(Pl. Mem. Supp. TRO, Ex. E, ECF No. 4-8), all of which contain a Choice of Law provision which selects New Jersey law as the applicable law and confers jurisdiction to the Superior Courts of New Jersey sitting in Hudson County, New Jersey, and the U.S. District Court of New Jersey sitting in Newark, New Jersey.

On or about August 1, 2007, YA Global filed an involuntary petition against Cobalis under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana Division ("First Bankruptcy"). Cobalis subsequently consented to bankruptcy relief, and on November 16, 2007 the Bankruptcy Court converted the case to a Chapter 11 proceeding.

On November 9, 2009, Cobalis instituted an adversary proceeding in connection with the Bankruptcy filing. Cobalis raised, inter alia, claims of breach of contract premised upon breach of the Securities Purchase Agreement and the Debenture Agreement, both of which are alleged by

3

Plaintiff to fall under the PIPE financing at issue in the instant action. Throughout the course of the adversary proceeding, the Bankruptcy Court permitted Cobalis to amend their Complaint on four separate occasions before ultimately dismissing the case with prejudice on August 24, 2011 for failure to state a claim upon which relief could be granted. The Bankruptcy Court dismissed with prejudice, noting that Cobalis had been given ample opportunity to state a claim for relief, and had failed to do so.

On June 9, 2010, the Bankruptcy Court confirmed Cobalis' Third Amended Plan of Reorganization. Pursuant to the Confirmation Order, Cobalis was required to enter into a written escrow agreement with YA Global. The agreement required Cobalis to deposit all payments due YA Global into an escrow account on the first day of each month, pending allowance or disallowance of YA Global's claims against Cobalis in the pending adversary proceeding. The Confirmation Order further provided that if Cobalis ever failed to make payment to the Escrow Account, YA Global would be authorized to immediately foreclose its liens on the Debtor's property, including any funds in the Escrow Account and the patents related to Pre-Histin®.

On July 5, 2011, YA Global entered a Notification of Disposition of Collateral with the Bankruptcy Court. YA Global notified the court that on July 1, 2011, Cobalis failed to make an escrow payment as required by the confirmed Plan of Reorganization and related Confirmation Order. Under the terms of the Plan and Order, Cobalis had ten days to cure the default before YA Global would be entitled to foreclose on Cobalis' property. Cobalis failed to cure the default within the allotted time.

On or about July 8, 2011, Cobalis filed a second petition for bankruptcy relief in the Los Angeles Division of the Central District of California ("the Second Bankruptcy"). The second filing

was transferred to the Santa Ana Division where the First Bankruptcy was pending, and was subsequently dismissed as a bad faith filing on August 22, 2011. Specifically, the Bankruptcy Court found the Second Petition constituted "a bad faith attempt to prolong the inevitable foreclosure by YA Global by improperly invoking a second automatic stay after the confirmed plan had gone into default." (Harper Decl., Ex 5. United States Bankruptcy Court, Central District of California, Santa Ana, July 27, 2011, 8:07-bk-12347-TA, ECF No. 7-7).

Also on August 22, 2011, the Bankruptcy Court entered an Order converting Cobalis' Chapter 11 Reorganization to a Chapter 7 Liquidation. As grounds for the conversion, the Bankruptcy Court provided both the financial instability of Cobalis and the questionable litigation strategies it had pursued throughout the course of the Bankruptcy proceeding. The Bankruptcy Court explained how its "deep misgivings" about the feasibility of the plan had materialized: the projected sales of PreHistin® had not nearly come to pass and any reported sales were "far too few and too late" to warrant sustaining the Reorganization Plan. **(**Harper Decl., Ex. 6, ECF No. 7-6**)** The Bankruptcy Court then disapprovingly questioned Plaintiff's litigation strategy of "ill-advised and unsupported motions", and concluded that the filing of the second bankruptcy could only be the result of "some nefarious purpose."Id.   The Court concluded by noting that the attempt to extract even further delay through the bad faith filing "strips this management of any remaining veneer of good faith and compels the court to take immediate remedial action."Id.

In addition to the Conversion of the First Bankruptcy and the dismissal of the Second Bankruptcy, the Bankruptcy Court also entered an Order granting YA Global's Motion for Relief from the Automatic Stay on August 22, 2011. **(**Harper Decl. Ex. 6, ECF No. **7-7)** The Order authorized YA Global to foreclose on funds held in the escrow account, as well as "all the Debtor's

personal property, inventory, intellectual property, and general intangibles."[3] Id.

Plaintiff commenced the present action by filing a complaint in the District of New Jersey on or about August 16, 2011. In its complaint, Plaintiff alleges that the PIPE financing transaction is usurious, and is therefore illegal and unenforceable under California law. Plaintiff asks this court for a judicial determination of the rights, duties, and obligations of the parties under the PIPE financing instruments. Plaintiff also seeks a preliminary injunction and a permanent injunction enjoining and prohibiting Defendants from enforcing any provisions of the instruments, and compelling Defendant to return all principle, interest, and other consideration to Plaintiff.

On August 18, 2011, two days after filing the Complaint, Plaintiff filed an Application on Notice for a Temporary Restraining Order. (App. Temp. Restr. Ord., Aug. 18, 2011, ECF No. 4). Plaintiff alleges that a preliminary injunction is required in order to prevent the unlawful collection of usurious rates of interest arising out of the PIPE financing transaction, and to permit its continued operation as a going concern.

For the reasons discussed herein, Plaintiffs motion for a preliminary injunction is hereby **denied**.

## II.　LEGAL STANDARD

Injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer

---

[3]The court specified that such property included, but was not limited to, "accounts receivable, trademarks, copyrights, and all U.S. or foreign patents and patent applications that are owned by [Cobalis], or to which [Cobalis] otherwise has the right to grant licenses, including those which generically or specifically claim to relate to PreHistin, a process for manufacturing or formulating the PreHistin, an intermediate used in such process or a use of PreHistin." and includes "all continuations, continuations-in-part, divisions, patents of addition, reissues, certificates of reexamination, substitutes, renewals or extensions of any of the foregoing."

Pharms. Co., 290 F.3d 578, 586 (3d Cir. 2002) (quotation and citation omitted); Kos Pharm. Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004); see also Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). "A decision to grant or deny a preliminary injunction is within the sound discretion of the district court." Sanofi-Aventis Deutschland GmbH v. Glenmark Pharms. Inc., 2010 WL 2428561 (D.N.J. June 9, 2010) (citing Oakley, Inc. v, Sunglass Hut Int'l, 316 F.3d 1331, 1339 (Fed. Cir. 2003)); see also Spartacus, Inc. v. Borough of McKees Rocks, 694 F.2d 947, 949 (3d Cir. 1982). In determining whether a preliminary injunction should be granted, a district court must consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.

Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994); see also ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n. 2 (3d Cir. 1996); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 191-92 (3d Cir. 1990); CIBA-GEIGY Corp. v. Bolar Pharm. Co., Inc., 747 F.2d 844, 850 (3d Cir. 1984) cert. denied 471 U.S. 1137 (1985). Plaintiff bears the burden of showing that these factors weigh in favor of granting the injunction. Kos Pharm. Inc., 369 F.3d at 708. "Only if the movant produces evidence sufficient to convince the [court] that all four factors favor preliminary relief should the injunction issue." Opticians Ass'n of Am., 920 F.2d at 192; see also Nutrasweet Co. v. Vit-Mar Enter. Inc., 176 F.3d 151, 153 (3d Cir. 1999);  AT&T Co. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994) (citation omitted).

The Third Circuit has accorded particular weight to the first two of the Injunction Factors:

irreparable harm and likelihood of success on the merits. Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197 (3d. Cir. 1990) (quoting In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982) ("[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent.")); see also Scholastic Funding Grp., LLC v. Kimble, 2007 U.S. Dist. LEXIS 30333, at *28 (D.N.J. Apr. 24, 2007). Nonetheless, the district court should only award preliminary injunctive relief upon weighing all four factors. Am. Tel. & Tel. Co., 42 F.3d at 1427, (citing Duraco Prod, Inc. v. Joy Plastic Enter. Ltd., 40 F.3d 1431, 1438 (3d Cir. 1994).)

Federal Jurisdiction in the instant matter is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(d).

**III. DISCUSSION**

Upon consideration of the submissions of the parties regarding the preliminary injunction requirements, we find that Plaintiff has failed to demonstrate either a likelihood of success on the merits or an irreparable injury. Although failure to satisfy either one of these factors would be fatal to Plaintiff's request for relief, we address each of these shortcomings in turn.

    A. Likelihood of Success on the Merits

    1.    Res Judicata

"For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001); see also Houbigant, Inc. v. Fed. Ins. Co., 374 F.3d 192, 205 (3d Cir. 2004); Munoz v. Sovereign Bank, 323 Fed. Appx. 184, 187 (3d Cir. 2009). Under New Jersey law, claim preclusion applies when a party has had "a fair opportunity to litigate a claim or cause of

action before a court with jurisdiction over the parties and the subject matter" and "suffers a final judgment adverse to him on the merits." Bango v. Ward, 12 N.J. 415, 420 (1953).  The party in whose favor the judgment was rendered may assert the judgment as a bar in a subsequent action on the same claim or cause of action. Id.  The test for identity of a cause of action for claim preclusion requires the court to determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same." Culver v. Ins. Co. Of North America, 115 N.J. 451, 461-62 (1989) (citing United States v. Athlone Industries, Inc., 746 F.2d 977, 984 (3d. Cir. 1984) (*emphasis in original*)).  See also First Union Nat'l Bank v. Penn Salem Marina, Inc. 190 N.J. 342, 352-353 (2007).

With respect to Bankruptcy proceedings, claim preclusion applies only if the current claim would have been within the jurisdiction of the court hearing the prior bankruptcy proceeding.  Corestates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 191 (3d Cir. 1999).  In order for a claim to fall within bankruptcy jurisdiction, it must be one that "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)(*partially overruled on other grounds*); see also 21 Broad St. DBT, LLC v. SML Realty of N.J., LLC, et al., 2011 U.S. Dist LEXIS 85693 *2 (2011) Furthermore, claim preclusion will apply if the events underlying the current claim are essentially similar to those underlying the claim made in the bankruptcy proceeding. Corestates Bank, 176 F.3d at 191.

The parties to this litigation have been involved in bankruptcy proceedings, and an

9

accompanying adversary proceeding, for the past four years.[4]  In the course of the adversary proceeding, Cobalis sued upon the very instruments it now challenges as illegal.  The result of the bankruptcy litigation was a dismissal with prejudice of each of Cobalis's claims.  The Bankruptcy Court took particular note that despite being given four opportunities to amend their complaint, Plaintiff was still unable to set forth a claim upon which relief could be granted.  There is no question that Plaintiff's claims arise from the same acts, and raise the same material facts and theories as those raised by Plaintiff in the previous litigation. Plaintiff could and should have raised any challenge to the validity of the instruments at the time that they sued upon them, and is now barred by claim preclusion from raising such challenges here.

Moreover, the Bankruptcy proceeding was converted from a Chapter 11 Reorganization to a Chapter 7 Liquidation as a result of Cobalis' inability to satisfy their debt payments on the instruments challenged here.  The very court that found it proper to convert the Bankrutpcy to a Chapter 7 also found it proper to allow YA Global to foreclose on their liens. Cobalis could have appealed the order entered by the bankruptcy court, but rather chose to file a separate action arising from the same transaction in this court, seeking to essentially reinstitute the automatic stay with respect to Cobalis. See In re Comer, 716 F.2d 168, 172 (3d. Cir. 1983)(holding order lifting stay is final and appealable).  The Bankruptcy court has already determined that Cobalis should no longer be subject to the stay, and we decline to undo what has already been decided.[5]

---

[4]The Bankruptcy Court had jurisdiction over the adversary proceeding as a core proceeding under 28 U.S.C. § 157(b).

[5]We also take note of the fact that this is not Plaintiff's first attempt to evade the effects of the Bankruptcy proceeding.  Plaintiff's previous attempt to file for bankruptcy in another division of California was dismissed as a bad faith filing, in which the Bankruptcy Court specifically found the filing to be "a bad faith attempt to prolong the inevitable foreclosure by YA Global by improperly invoking a second automatic stay after the confirmed plan had gone

2.     Applicable Law

Plaintiff alleges that California law is the appropriate law to apply in the instant matter. Plaintiff makes this assertion in the face of Choice of Law provisions contained in the PIPE instruments which designate New Jersey law is the applicable law, as well as the fact that the parties have previously litigated the instruments under New Jersey law.  Clearly, Plaintiff was unsatisfied with the California Bankruptcy Court's application of New Jersey law, and now seeks a New Jersey District Court application of California law in hopes of a more favorable result.

"In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state." Homa v. Am. Express Co., 558 F.3d 225, 227 (3d Cir. 2009); see also Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). (conflict of law rules applied in federal court sitting in state must conform with those prevailing in state court.)  The New Jersey Supreme Court has cited to the Restatement (Second) Conflict of Laws § 187 (1969) as guidance in construing its own choice-of-law jurisprudence.  Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341-42 (1992).  The Restatement provides that the law of the state chosen by the parties will apply, unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.   Id. (asterisks in original).

The New Jersey Supreme Court has held that a "substantial relationship" exists with a state when

---

into default." (Harper Decl. Ex. 5, ECF No. 7-7)

one of the parties is headquartered in that state. Id. at 342, see also N. Bergen Rex Transp. Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999); Hertz Corp. v. Friend, 130 S.Ct. 1181, 1192 (2010) (finding "principal place of business" in practice to be the place where the corporation maintains its headquarters, "provided that the headquarters is the actual center of direction, control, and coordination"). Here, it is clear that the "substantial relationship" exception does not apply, as YA Global and Yorkville Advisors both have their principal place of business in Jersey City, New Jersey.

We must also note that the parties to the instant matter undisputedly applied New Jersey law in the previous Bankruptcy litigation to interpret the instruments at issue here. Plaintiff offers no explanation as to what precipitated this change, beyond merely setting forth the transaction's connections with California and the assertion that the instrument violates California public policy.[6]

We turn then to the state policy exception to the application of choice of law provisions. It cannot be said that the public policy of California is offended by the application of the choice of law provisions here, as California courts themselves have applied choice of law provisions under similar circumstances. See Gamer v. duPont Glore Forgan, Inc., 135 Cal.Rptr. 230, 238 (1977); Ury v. Jewelers Acceptance Corp., 227 Cal.Rptr. 376, 382 (Cal. Dist. Ct. App. 1964); but see Mencor Enter., Inc. v. Hets Equities Corp., 235 Cal.Rptr. 464, 440 (1987) (distinguishing *Gamer* and *Ury* as decided after consideration of evidence regarding the domiciliary status of the

---

[6]Plaintiff notes that the instruments were executed in California, the PIPE transaction was effectuated in California, the money underlying the transaction was exchanged in California, and all of the parties were present in California. (Pl. Mem. Supp. Mot. TRO, Aug. 17, 2011, ECF No. 4-2).

parties, the relationship of the state of the chosen law, and the public policy of the forum state.)[7] Like New Jersey, California Courts refer to the rules in Restatement Second of Conflict of Laws and employ a factual analysis in determining whether to enforce a choice of law provision in the face of a usury claim. Mencor, 235 Cal.Rptr. at 466, 470.  California courts will not enforce a choice of law provision absent a determination that the state of the chosen law has a relationship to the parties or the contract. Id. at 468.  However, the ultimate decision of whether to apply the choice of law provision depends upon consideration of "the domiciliary status of the parties, the relationship of the state of the chosen law to the parties and the contract, the public policy of the forum state, and other factors," all issues of fact which require an evidentiary hearing. Id. at 470. Such a determination cannot be accomplished during the preliminary stages of the litigation.

Here, it is clear that the forum state has significant contacts with the parties and the transaction, as YA Global's principle place of business is in Jersey City, New Jersey, the Securities Purchase Agreement provides that the closing of the sale and purchase of the debentures was to occur in New Jersey, and the parties agreed that any action between them shall be heard in Hudson County, New Jersey.  At this stage in the litigation, we are unable to make the factual analysis required to determine whether the choice of law provision should be trumped by California public policy.  It therefore cannot be said that California law will necessarily apply. Consequently, Plaintiff has not demonstrated a likelihood of success on the merits.

---

[7] In the case of Ury the California Court of Appeals specifically concluded that California does *not* have a strong pubic policy against enforcing contracts valid under chosen law but usurious under California law because the constitutional prohibitions against usury exempt various classes of lenders and gives the Legislature the right to prescribe limits for the exempted lenders. 227 Cal.Rptr. at 382.  This conclusion was distinguished, however, in Mencor as the result of a factual analysis made after the court conducted an evidentiary hearing. 235 Cal.Rptr. at 470..

B.  Irreparable Harm

Although this court has already determined that Plaintiff has not demonstrated a likelihood of success on the merits, and is therefore not entitled injunctive relief, we will briefly address allegations regarding irreparable harm in further support of this court's denial of Plaintiff's motion.

"A plaintiff has the burden of proving a 'clear showing of immediate irreparable harm'" absent injunctive relief.  Hoxworth, 903 F.2d at 205. (citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 225 (3d Cir. 1987)). Irreparable injury occurs when money damages are difficult to ascertain or would be inadequate.  In re Arthur Treacher's Franchisee Litig., 689 F.2d at 1146. "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." Instant Airfreight Co. v. C.F. Airfreight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  Thus, the "preliminary injunction must be the *only* way of protecting the plaintiff from harm." Id. (*emphasis added*); see also Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994).   Failure to establish irreparable injury automatically results in denial of a preliminary injunction. Instant Airfreight Co., 882 F.2d at 800; see also Nutrasweet Co., 176 F.3d at 153.

It is well settled that "an injunction will not be upheld where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law."  In re Arthur Treacher's Franchisee Litig., 689 F.2d at 1145; see also Sampson v. Murray, 415 U.S. 61, 90 (1974); A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3d Cir. 1976).  A loss of one's business that is reducible to money damages is therefore insufficient to sustain a claim for preliminary injunctive relief.  See Instant Air Freight Co., 882 F.2d at 801; Franks GMC Truck Ctr., Inc. v.

14

Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988); see also Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc., 306 Fed. Appx. 727, 731 (3d Cir. 2009)(denying preliminary injunctive relief when loss of business, market share, or good will was reducible to a monetary figure).

The core of the present dispute is money.  Plaintiff argues that a temporary restraining order is necessary in order to halt Defendants' "unlawful collection efforts and to preserve Cobalis' ability to survive as a going concern." (Pl.'s Mem. Supp. Mtn. TRO 9, Aug. 17, 2011, ECF No. 4-2).  Should Plaintiff prevail on the merits regarding their claim of the collection of usurious interest rates, an action for money damages would be both available and ascertainable in the amount of the alleged unlawful collection.[8]

With respect to Plaintiff's claim of injury to its ability to continue as a going concern, the conversion of the Bankruptcy proceeding to a Chapter 7 Liquidation cuts against any assertion that granting the preliminary injunction will prevent such injury. Moreover, the conversion of the bankruptcy to a Chapter 7 Liquidation dispels any immediacy of the purported injury, as Cobalis is currently under the control of the Bankruptcy Trustee as it undergoes liquidation. We take particular note that the conversion was based directly on Cobalis' lack of a financially viable future.[9]  We certainly cannot support the grant of the extraordinary remedy of injunctive relief

---

[8]Additionally, in the event that Plaintiff were to succeed on the merits, YA Global has certified that it maintains sufficient liquid assets to repay the money from escrow, as well as any additional damages resulting from the foreclosure of Cobalis' assets.(Gonzalez Decl. Aug. 24, 2001, ECF No. 7-1).

[9]Cobalis had defaulted on most of the monthly installment payments due escrow on account of YA Global's disputed claim.  Further, "the millions in sales of PreHistin® projected by debtor to be realized have not come to pass, not even nearly." (Harper Decl., Ex. 4,  ECF No. 7-6)  Rather, it appeared as though "much of the funding to date has come from...additional investments from [Chaim Stern], and although no reliable reports had been presented, the sales that were reported were "far too few and too late". Id. Finally, the Bankruptcy Court took note that the litigation strategy undertaken by Cobalis regarding the amounts owed to YA Global

when it cannot reasonably be said that such relief will accomplish the purpose for which relief is requested.

Plaintiff has not alleged facts sufficient to prove that allowing the collection to go forward will itself prevent Plaintiff's survival as a going concern, nor that any damages sustained are irreparable and could only be cured by a preliminary injunction. Plaintiff is therefore unable to satisfy his burden of showing this factor weighs in favor of granting a preliminary injunction and its motion for a preliminary injunction must, by necessity, fail.

### C. Harm to Defendants and Public Interest

The Third Circuit has "held that these latter two factors should be taken into account only when they are relevant." Am. Tel. and Tel. Co., 42 F.3d at 1427 n.8; see also Hoxworth, 903 F.2d at 197. These factors are only relevant if Plaintiff has first established *"both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted" because a preliminary injunction cannot be sustained "where either or both of these prerequisites are absent." Id. (internal citations omitted). Since at least one of these prerequisites is absent, this Court need not address the potential harm to Defendants from or the public interest in granting a preliminary injunction.

---

made any future prospect that the debtor could earn its way out "all the more remote." Id.

**IV.** <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for preliminary injunction is **denied**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh<br>DENNIS M. CAVANAUGH, U.S.D.J.

Dated: October 18, 2011
cc: All counsel of record
     Hon. Joseph A. Dickson, U.S.M.J.